UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE WILSON MARINE TRANSPORTERS | * | CIVIL ACTION |
| | * | NUMBER: 00-238 |
| * * * * * * * * * * * * | | SECTION "L" MAG 4 |

*FILED*
*U.S. DISTRICT COURT*
*EASTERN DISTRICT OF LA*

*2001 JAN 22 PM 1:18*

*LORETTA G. WHYTE*
*CLERK*

## MOTION TO INTERVENE FOR PAYMENT OF
## PROMISSORY NOTE AND MEDICAL TESTING

NOW INTO COURT, through undersigned counsel, come Oceanside, Inc. and Diagnostic Management Affiliates, L.L.C., Louisiana corporations authorized to do and doing business in the Parish of Orleans, who hereby move to file the attached Petition of Intervention for payment of promissory note and medical testing for reasons indicated in the accompanying memorandum.

A hearing has been noticed regarding this motion as mover was unable to determine if the motion was opposed by plaintiff.

Respectfully submitted,

JEFFREY M. REILLY (Bar #16774)
2609 Canal Street Suite 300
New Orleans, Louisiana 70119
Telephone: (504) 822-6367
Facsimile: (504) 827-2855

___ Fee
___ Process
_X_ Dktd
___ CtRmDep
Doc.No. _16_

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE WILSON MARINE TRANSPORTERS | * | CIVIL ACTION |
| | * | NUMBER: 00-238 |
| * * * * * * * * * * * * * | | SECTION "L" MAG 4 |

<u>PETITION OF INTERVENTION</u>

NOW INTO COURT, through undersigned counsel, come Oceanside, Inc., and Diagnostic Management Affiliates, L.L.C. and allege as follows:

1.

Oceanside, Inc., made a loan to Allen Taylor for his living expenses while this action was pending as evidenced by the following described promissory note:

1) A certain promissory note dated October 1, 1999, in the face amount of $1,740.00, payable at the office of Oceanside, Inc.,

made, signed, and executed by Allen Taylor. A copy of the promissory note described above is attached hereto and made a part hereof as fully as if copied in extenso. The promissory note was pre-computed. As of January 2, 2001, the balance remaining due (with accrued interest) on the promissory note was $1,319.

2.

At the time he executed the promissory note, Allen Taylor executed an assignment in favor of the holder of the note for its payment from such proceeds as he may realize as a result of the above captioned cause. A copy of the assignment is attached hereto and made a part hereof as fully as if copied in extenso.

4.

In connection with his claim related to this cause, Allen Taylor had an MRI of his right knee done by Diagnostic Imaging. Diagnostic Management Affiliates, L.L.C., in accordance with their agreement with Allen Taylor, paid for the MRI and issued a statement for $1,045.00. Also in accordance with the aforementioned agreement, service charges at the rate of 1½% on the unpaid balance began to accrue 120 days after the date of the test and as of January 2, 2001, service charges in the amount of $62.70 had accrued.

5.

From any settlement or judgment in favor of Allen Taylor arising from the above captioned cause, Oceanside, Inc. and Diagnostic Management Affiliates, L.L.C. are entitled to be paid, in preference and priority, the amount due on the promissory note and invoice, respectively, in accordance with the terms thereof.

WHEREFORE, Oceanside, Inc. and Diagnostic Management Affiliates, L.L.C. pray that they be allowed to intervene in the above captioned cause and that, in the event of a settlement or judgment in favor of Allen Taylor, Oceanside be awarded the sum of $1,319.39, and Diagnostic Management Affiliates, L.L.C. the sum of $1,107.70 plus all additional interest/service charges accruing after January 2, 2001, in accordance with the terms of the loan by Oceanside, Inc. and the invoice of Diagnostic Management Affiliates, L.L.C.

Respectfully submitted,

JEFFREY M. REILLY (Bar #16774)
2609 Canal Street Suite 300
New Orleans, Louisiana 70119
Telephone: (504) 822-6367
Facsimile: (504) 827-2855

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE WILSON MARINE TRANSPORTERS | * | CIVIL ACTION |
| | * | NUMBER: 00-238 |
| * * * * * * * * * * * * * | | SECTION "L" MAG 4 |

MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE
FOR PAYMENT OF PROMISSORY NOTE AND MEDICAL TESTING

1.

Allen Taylor requested that Oceanside, Inc. advance funds to him for living expenses during the pendency of these proceedings and executed a promissory note secured by an assignment, in favor of the holder of the note, to have any balance due on the note paid from any award he might receive as a result of these proceedings.

2.

Allen Taylor requested that Diagnostic Management Affiliates, L.L.C. secure the services of a medical provider for him (and pay the costs of such services) for an MRI of his knee so that he could pursue his cause of action against Wilson Marine Transporters and, on August 26, 1999, he granted an assignment of an interest in any proceeds he may realize as a result of his claim against Wilson Marine Transporters to Diagnostic Management Affiliates, L.L.C.

3.

Due to the specific assignment of an interest in these proceedings by Allen Taylor to Oceanside, Inc. and Diagnostic Management Affiliates, L.L.C., they have the right to intervene herein on the grounds set forth in the Federal Rules of Civil Procedure, Rule 24(a)(2).

4.

This intervention will not delay nor unduly increase the length of any trial in this case.

FOR THE FOREGOING REASONS, Oceanside, Inc. and Diagnostic Management Affiliates, L.L.C. move to intervene in these proceedings in order to recover the sums due from Allen Taylor pursuant to the assignments made to them.

                Respectfully submitted,

                JEFFREY M. REILLY (Bar #16774)
                2609 Canal Street, Suite 300
                New Orleans, Louisiana 70119
                Telephone: (504) 822-6367
                Facsimile: (504) 827-2855

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE WILSON MARINE TRANSPORTERS | * | CIVIL ACTION |
| | * | NUMBER: 00-238 |
| * * * * * * * * * * * * | | SECTION "L" MAG 4 |

NOTICE OF HEARING

NOTICE IS HEREBY GIVEN that a hearing will be held on Wednesday, February 7, 2001, at 11:00 a.m. before Magistrate Judge Karen Roby on Oceanside, Inc.'s and Diagnostic Management Affiliates, L.L.C.'s, Intervention in the above captioned matter.

                                              JEFFREY M. REILLY (Bar #16774)
                                              2609 Canal Street, Suite 300
                                              New Orleans, Louisiana 70056
                                              Telephone: (504) 822-6367
                                              Facsimile: (504) 827-2855

CERTIFICATE

I hereby certify, in compliance with the local rules of Court, that a copy of the Petition of Intervention and attachments, Motion to Intervene, Memorandum in Support thereof and Notice of Hearing have been served as follows:

    Michael Fenasci
    1200 Clearview Pkwy. Suite 1170
    Harahan, LA 70123

    Jefferson Tillery
    201 St. Charles Ave. 47th Floor
    New Orleans, LA 70170-5100

by placing same in the U. S. Mail, first class postage prepaid, on the 16th day of January, 2001.

                                              JEFFREY M. REILLY

DIAGNOSTIC MANAGEMENT AFFILIATES, L.L.C.
3532 CANAL STREET, SUITE 6
NEW ORLEANS, LA  70119
(504) 484-7077     FAX (504) 484-6868

FEDERAL ID # 72-1356739

DATE :  01/02/2001

INVOICE #    012142

Sean Alfortish
4240 Canal Street
New Orleans, LA 70119

Allen Taylor

DOA :  06/13/1999

Diagnostic Imaging - Uptown

MRI of Right Knee

09/16/1999

| | | |
|---|---|---|
| CHARGES | | 1,045.00 |
| MINUS DMA DISCOUNT | (-) | 0.00 |
| NEW BALANCE | | 1,045.00 |
| DEPOSIT RECEIVED | (-) | 0.00 |
| PRINCIPAL RECEIVED | (-) | 0.00 |
| SERVICE CHARGE ACCRUED | (+) | 62.70 |
| BALANCE DUE | | 1,107.70 |

This is not a final invoice.  Interest will accumulate accordingly.  Please call for a final payout.

## ASSIGNMENT OF INTEREST IN PROCEEDS
## FROM CLAIM OR LAWSUIT

STATE OF LOUISIANA
PARISH OF **Orleans**

In consideration of services rendered and to be rendered on my behalf by Diagnostic Management Affiliates, LLC ("DMA") and its affiliated health care providers, as recommended by my treating physician, and as authorized for and on my behalf through DMA by my attorney, **Sean D. Alfortish**, I do hereby irrevocably assign, convey and transfer unto DMA, a vested interest in the proceeds of any judgment or settlement of the lawsuit or claim which I am prosecuting to recover damages for injuries, said vested interest to be sufficient to reimburse DMA for all amounts due by my attorney to DMA of all services provided to me through DMA and its affiliated health care providers with priority from the proceeds of my lawsuit. This assignment is being made voluntarily and with full knowledge in consideration of services rendered by DMA in helping me obtain necessary medical care requested, as recommended by my treating physician. This assignment of interest shall be not only for any and all necessary medical care as presently ordered by my attending physician, but for any future said necessary medical procedure as ordered by my attending physician, and for which DMA renders its services.

I do further hereby authorize and empower my attorney, _____, or any subsequent attorney, to deduct immediately from the proceeds of any settlement and/or judgment, any and all amounts as may be due and owing to DMA, without further authorization from me, and to forward these payments directly to DMA. This authorization is complete and irrevocable, in consideration of the services rendered by DMA.

I do further acknowledge that in the event I should change attorneys handling this claim or lawsuit, it is my responsibility to notify said new attorney of the obligation to DMA and to provide them with copies of any and all documentation as may be necessary to protect the interest of DMA.

In order to further protect the interest of DMA to this assignment, I am providing the following information concerning my claim or lawsuit that is true and correct to the best of my knowledge:

DATE OF ACCIDENT: **June 13, 1999**

NAME(S) OF ALLEGED LIABLE PARTY OR PARTIES: **John Wilson Towing**

NAME OF COURT: **U.S. EASTERN DISTRICT**

CAPTION OF LAWSUIT: **Allen Taylor vs. Wilson Marine Transporters**

CASE NUMBER: **00-238**    SECTION/DIVISION: ___

NAME OF INSURANCE COMPANIES PROVIDING COVERAGE: **Clarendon Nat'l Ins Co.**

ATTENDING PHYSICIAN: **Dr. Allen Johnston**

DATE: **8/26/99**    _____ (CLIENT)

DATE: **8/26/99**    _____ (ATTORNEY)

**UNIFORM COMMERCIAL CODE-FINANCING STATEMENT-FORM UCC-1**

This FINANCING STATEMENT is presented for filing pursuant to Chapter 9 of the Louisiana Commercial Laws

**1. DEBTOR'S EXACT FULL LEGAL NAME - Insert only one debtor name (1a or 1b)**

1a ENTITY'S NAME

OR
1b. INDIVIDUAL'S LAST NAME: Taylor | FIRST NAME: Allen | MIDDLE NAME: Dan | SUFFIX:

1c. MAILING ADDRESS: P.O. Box 86 Hwy 23 | CITY: Boothville | STATE: LA | POSTAL CODE: 70038

1d. S S OR TAX I.D. #: 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

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - Insert only one debtor name (2a or 2b)**

2a. ENTITY'S NAME

OR
2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX

2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE

2d. S.S. OR TAX I.D. #

**3. SECURED PARTY INFORMATION**

3a SECURED PARTY: OCEANSIDE, INC. | 3b S.S. # OR EMPLOYER I.D. NO.: 72-0847866

3c MAILING ADDRESS: 2609 Canal Street, Suite 300, New Orleans, LA 70119

4a ASSIGNEE OF SECURED PARTY (IF ANY) | 4b S.S. # OR EMPLOYER I.D. NO.

4c. MAILING ADDRESS

**5. PROPERTY INFORMATION**

5a This FINANCIAL STATEMENT covers the following types or items of property:

6/13/99
Wilson Marine
Hull of Marsh Bucket Machine

U.S. Eastern District Court
# 00-238

INSTR. No. 36-152260
MORTGAGE OFFICE
PARISH OF ORLEANS

5b ☐ Products of collateral are also covered

6a. Check if applicable and attach legal description of real property:
☐ Fixture filing under R.S. 10:9-313
☐ Minerals of the like (including oil and gas) or accounts subject to R.S. 10:9-103(5) will be financed at the wellhead or minehead of the well or mine.
☐ The debtor(s) do not have an interest of record in the real property (Enter name and social security/employer I.D. number of an owner of record in 6b and 6c.)

6b OWNER OF REAL PROPERTY (if other than named debtor) | 6c. SS# OR EMPLOYER I.D. NO.

7a This statement if filed without the debtor's signature to perfect a security interest in collateral (check ☒ if so)
☐ already subject to a security interest in another jurisdiction when brought in to this state or debtor's location changed to this state.
☐ which is proceeds of the original collateral described above in which a security interest was perfected.
☐ as to which the filing has lapsed.
☐ acquired after a change of debtor's name, identity or corporate structure AND social security or employer I.D. number

7B. ☐ Debtor is a Transmitting Utility. Filing is Effective Until Terminated Pursuant R.S. 10:9-403(8)

**8 SIGNATURE(S) OF DEBTOR(S)**
Allen Taylor

**11. THIS SPACE FOR USE OF FILING OFFICER (DATE, TIME, ENTRY# AND FILING OFFICER)**

2000 SEP 27 P 1:41

**9 SIGNATURE(S) OF SECURED PARTY(IES) (if applicable)**
OCEANSIDE, INC.                    40-79

**10 Return copy to:**
NAME: OCEANSIDE, INC.
ADDRESS: 2609 Canal Street, Suite 300
CITY, STATE / ZIP CODE: New Orleans, LA 70119

12. Number of additional sheets presented ___

LOUISIANA APPROVED FORM UCC-1 SECRETARY OF STATE W. FOX McKEITHEN
(1) FILING OFFICER COPY

## PROMISSORY NOTE - NEGOTIABLE PAPER

For value received the undersigned Borrower promises to pay to Bearer the sum of _____ One thousand seven hundred forty _____ dollars and ____ no ____ cents ($ 1740.00 ) in 60 monthly installments of principal and interest in the amount of Twenty nine _____ dollars and ____ .00 cents ($ 29.00 ) each, beginning on _____, _____ and continuing thereafter on the first day of each succeeding month, and in a final installment of the entire unpaid balance plus accrued deferral charges on _____, (the "Final Payment Date") Annual Percentage Rate 38.16 %.

The rate of the "loan finance charge" for this note shall be equal to: thirty-six percent per year for that portion of the unpaid principal amount not exceeding one thousand four hundred dollars, twenty-seven percent per year for that portion of the unpaid principal amount exceeding one thousand four hundred dollars and not exceeding four thousand dollars; twenty-four percent per year for that portion of the unpaid principal amount exceeding four thousand dollars and not exceeding seven thousand dollars; and twenty-one percent per year for that portion of the unpaid principal amount exceeding seven thousand dollars

If an installment is not paid within ten days after its due date, the holder may unilaterally grant a deferral of the entire unpaid balance of the loan for one month, in which event the Borrower promises to pay a deferral charge equal to the product of the rate of the loan finance charge multiplied by the balance at the time of deferral, divided by twelve and the Final Payment Date shall be extended by the number of months that the balance is deferred

No deferral charge shall be made for a period after the date that holder elects to accelerate the maturity of this promissory note

If any installment is not paid in full within ten days after its scheduled or deferred due date, the Borrower promises to pay a late charge equal to five percent of the unpaid amount of the installment but not exceeding fifteen dollars   No late charge shall be made for any installment for which a deferral is granted

The undersigned Borrower promises to pay the outstanding balance of this promissory note immediately without notice or demand if (a) the undersigned Borrower should die, (b) the undersigned Borrower should discharge the Attorney who is handling the Claim, (c) the Claim should be resolved by final judgment or settlement, (d) any sum of money shall be paid, or any thing of value shall be given to or for the account of the Borrower on account of the Claim, (e) the Attorney should fail to take any step in the prosecution of the Claim for a period of six months, (f) the Borrower should fail to provide to the holder, on request, a recordable assignment, consent judgment, intervention or other instrument which may be necessary or advisable to perfect the holder's security rights and enable the holder to enforce its security interest against any party who may be liable for the Claim and other third parties, (g) the undersigned Borrower should breach any promise to the Holder, and (h) the undersigned Borrower should default on any other indebtedness for borrowed money which is secured by the Claim. The "Claim" is: (i) all present and future rights that the Borrower has or may have against all parties who are or may be liable under law for personal injury and other damage or loss suffered by the Borrower, (ii) any lawsuit brought to recover for such damage, injury or loss; (iii) all claims, demands and actions in which the Borrower is or has been represented by a Lawyer; and (iv) all general intangibles arising out of any claim, cause of action or other right to recover damages from any person or entity for personal injury to the Borrower, loss of or damage to the property of the Borrower, or injury to any other interest of the Borrower which is caused by the fault of or violation of law by any person or entity

If deferrals have been granted for two installments and a subsequent installment is not paid in full within ten days after its due date, the holder of this promissory note may, upon first giving the maker written notice, elect to convert the debt into a simple interest obligation   The notice shall state the exact date on which the conversion will occur, the interest rate to be charged under the simple interest transaction, the balance due on this promissory note at the time of the conversion, and whether there will be a balloon payment. Upon such conversion, the undersigned Borrower promises to pay the entire balance of the note in principal and interest on demand, and, if no demand is made and if this note does not become immediately due and payable upon the existence or occurrence of a condition or event described in clauses (a) through (h) in the preceding paragraph prior to such date, to pay the entire balance of this note in principal and interest on the Final Payment Date.

If this promissory note should become immediately due and payable as provided above or if the debt represented by this note should be converted into a single payment, simple interest obligation, then there shall be a rebate of the unearned loan finance charge equal to the proportion of the loan finance charge, after first deducting from such charge a prepayment fee of twenty-five dollars, as the sum of the monthly time balances beginning one month after the month in which the maturity of this note is accelerated or in which the conversion occurs, bears to the sum of all the monthly time balances under the schedule provided herein   If more than one-half of the term of this note has elapsed, the rebate shall be computed without deducting a prepayment charge   Deferral charges will not be rebated

If this promissory note should become immediately due and payable as provided above or if the debt represented by this note should be converted into a single payment, simple interest obligation, the unpaid balance of this note shall thereafter bear interest at the rate of the loan finance charge, provided, however, the rate of the loan finance charge for the period beginning one year after the maturity of the note shall be eighteen percent per annum

This promissory note is payable at the offices of _Oceanside, Inc._, Inc., Suite 300, 2714 Canal Street, New Orleans, Louisiana 70119 or at such other place as the holder may from time to time designate in writing to the maker

If the holder of this promissory note should retain an attorney or firm of attorneys to collect this note or otherwise to protect the rights of the holder, the undersigned Borrower promises to pay the fees of such attorney or firm of attorneys which are fixed at 25% of the unpaid debt, plus costs

The maker and any co-makers, any indorser hereof and any other party hereto and any guarantor hereof (each an "Obligor" and collectively the "Obligors"), and each of them, (A) waive(s) presentment, demand, notice of demand, protest, notice of protest and notice of nonpayment or dishonor and any other notice required to be given under the law to any Obligor; and (B) without notice to or further act by any Obligor, consent(s) to (i) any and all delays, extensions, renewals or other modifications of this note; (ii) waiver of any term hereof; (iii) release or discharge by the holder of any Obligor, (iv) release, substitution or exchange of any security for the payment hereof; (v) failure to act on the part of the holder, and (vi) any indulgence granted by the holder to any Obligor -- from time to time, one or more times -- and agrees that no such action, failure to act or failure to exercise any right or remedy on the part of the holder shall in any way affect the obligations of any Obligor, or be construed as a waiver by the holder of , or otherwise affect, any of the holder's rights or such party's obligations under this note.

This promissory note is subject to the Debt Cancellation Agreement if the Borrower has indicated in the Disclosure Statement that the Borrower wants to enter into the Debt Cancellation Agreement.

I have received a copy of the note.

This promissory note shall be governed by the law of Louisiana.

_Linda Christopher_ / WITNESS   _Allen Tyler_ / BORROWER'S SIGNATURE   10/1/95 / DATE

INSTALL/SINGLE          WHITE - ORIGINAL     PINK - BORROWER'S COPY

# FEDERAL TRUTH-IN-LENDING DISCLOSURE STATEMENT AND SECURITY AGREEMENT

BORROWER: Allen Taylor
P.O. Box 86 Hwy 23 Boothville 70038

CREDITOR: Oceanside, Inc.
2714 Canal St., Suite 300
New Orleans, LA 70119
(504) 822-6367

Account No. 39750

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate | FINANCE CHARGE<br>The dollar amount the credit will cost you | AMOUNT FINANCED<br>The amount of credit provided to you or on your behalf | TOTAL OF PAYMENTS<br>The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 38.16 % | $967.41 | $772.59 | $1740.00 |

Your payment schedule will be

| Number of Payments | Amount of Payments | First Payment Due Date | OTHER PAYMENTS DUE SAME DAY OF EACH SUCCEEDING MONTH | Final Payment Due Date |
|---|---|---|---|---|
| 60 | $29.00 | 11/1/99 | | 10/1/2004 |
| | $ | | | |

Earlier payment may be required in certain circumstances as provided in the contract documents, and the debt may be converted to a single payment, simple interest obligation with a demand feature, as provided in the contract documents

**Insurance:**
Credit life and dismemberment insurance is not required to obtain credit, and will not be provided unless you sign and agree to pay the additional cost

| Type | Premium | | |
|---|---|---|---|
| Credit Life and Dismemberment | $ | I want Credit Life and Dismemberment Insurance | SIGNATURE |

**Debt Cancellation Agreement:**
You are not required to enter into a Debt Cancellation Agreement to obtain credit. The term of the Debt Cancellation Agreement expires when the note matures

| | Cost | | |
|---|---|---|---|
| Debt Cancellation Agreement | $160.95 | I want the Debt Cancellation Agreement. | Allen Taylor SIGNATURE |

I do not want the Credit Life and Dismemberment Insurance or the Debt Cancellation Agreement.
SIGNATURE

**Security:** You are giving a security interest in:
☒ Your claim for personal injury and/or other loss or damage and any lawsuit brought to enforce such claim. Collateral securing other loans with us may also secure this loan
☐ (Brief description of other property)_____

**Late Charge:** If a payment is late, you will be charged five percent of the unpaid amount of the installment but not exceeding fifteen dollars.
**Prepayment:** If you pay off early, you may have to pay a penalty and you may be entitled to a refund of part of the finance charge.
See your contract documents for additional information about nonpayment, default, any required repayment in full before the scheduled date, prepayment refunds and penalties, and security interests.

**NSF Check Charge:** A charge will be assessed on each check returned for Non-Sufficient Funds (NSF), in the amount of 5% of the check or $15.00, whichever is less.
CONTRACT RATE 35.99 %

## ITEMIZATION OF THE AMOUNT FINANCED

1) Amount Given To You Directly ... $611.64
2) Amount Paid On Your Account ... $
3) _____ $

AMOUNT PAID TO OTHERS ON YOUR BEHALF (4 THROUGH 9):

4) To Creditor for Debt Cancellation Agreement $160.95
5) To Credit Life & Dismemberment Insurance Co $

6) To Creditor Origination Fee ... $ 25.00
7) To Creditor Documentation Fee $ 5.00
8) To _____ $
9) To _____ $
10) (Less) Prepaid Finance Charges . $ (30.00)
11) Amount Financed (Sum of 1 through 9 minus 10) $ 772.59

## SECURITY AGREEMENT

1. Pursuant to chapter 9 of Title 10 of the Louisiana Revised Statutes (the Louisiana counterpart to Article 9 of the Uniform Commercial Code) and other applicable law, the Borrower grants to the Creditor a continuing security interest in:

(a) all present and future rights that the Borrower has or may have against all parties who are or may be liable under law for personal injury and other damage or loss suffered by the Borrower as a result of, or as follows:

Accident Date 6/13/95    Location offshore
Defendants Wilson Marine
Brief Accident Description fell off Marsh Bucket Machine

(b) any lawsuit brought to recover for such damage, injury or loss;
(c) all claims, demands and actions in which Sean Alfortish _____ (the "Attorney") represents the Borrower;
and
(d) all general intangibles arising out of any claim, cause of action or other right to recover damages from any person or entity for personal injury to the Borrower, loss of or damage to the property of the Borrower, or injury to any other interest of the Borrower which is caused by the fault of or violation of law by such person or entity;
(The rights mentioned in clauses a, b, c and d together constitute the "Claim") to secure the payment and performance by the Borrower of all of his/her present and future obligations to the Creditor (the "Obligations"), up to the maximum amount of two million dollars

### ADDITIONAL SECURITY AGREEMENT TERMS ON REVERSE SIDE

I grant to the Creditor a security interest as set forth in the Security Agreement and I acknowledge that I have received a completely filled-in copy of this Disclosure Statement and Security Agreement, the Promissory Note and the Debt Cancellation Agreement or Credit Life and Dismemberment Policy (if purchased)

_____ WITNESS    _____ BORROWER'S SIGNATURE    10/1/95 DATE

**NOTICE: SEE OTHER SIDE FOR ADDITIONAL SECURITY AGREEMENT INFORMATION**
WHITE - ORIGINAL    YELLOW - BORROWER'S COPY

## ADDITIONAL SECURITY AGREEMENT TERMS

2.1 The "Claim Obligors" are the defendant(s) in any suit to enforce the Claim, all liability insurers of persons who are or may be liable to the Borrower for the Claim and all other persons or entities who are or may be liable to the Borrower for the Claim.

2.2 The "Other Lawyers" are all lawyers other than the Attorney who may represent the Borrower with respect to the Claim.

2.3 The Creditor shall be entitled to receive payment of the Obligations from the Claim Obligors from any and all sums payable to the Borrower by reason of the Claim, because the promissory note and the other Obligations are due and payable when any sum is payable to the Borrower by reason of the Claim.

2.4 The Borrower authorizes and instructs the Attorney, all Other Lawyers and the Claim Obligors to pay to the Creditor the amount of the Obligations from any and all sums payable to the Borrower by reason of the Claim.

2.5 The Borrower promises to cause the Claim Obligors to pay an amount equal to the Obligations to the Creditor before any sum is paid to or for the benefit of the Borrower on account of the Claim.

2.6 The Borrower promises to execute or cause to be executed such receipts, releases, notices, pleadings or other filings that may be necessary or useful to facilitate the payment of the Obligations directly by the Claim Obligors to the Creditor.

3. The Borrower promises to enforce the Claim diligently and as a prudent person would and to cause the Attorney and all Other Lawyers to enforce the Claim diligently and as a prudent person would.

4. The Borrower promises to furnish promptly to the Creditor all information regarding the Claim that the Creditor may reasonably request and to permit the Creditor, upon reasonable notice, to inspect and make copies of the records of the Borrower relating to the Claim. The Borrower authorizes and instructs the Attorney and all Other Lawyers to furnish to the Creditor such information regarding the Claim and the proceedings to enforce the Claim as the Creditor may request.

5. The Borrower promises to keep the Claim free of all other security interests and other privileges, liens or encumbrances, and promises not to sell or assign the Claim.

6. The Borrower promises to execute and deliver any document and to do any other act which the Creditor may reasonably request to create, preserve, perfect or otherwise effectuate a first-priority perfected security interest in the Claim in favor of the Creditor to secure the Obligations.

7. Any declaration of fact made by authentic act before a notary public and two witnesses by a person declaring that such fact lies within his knowledge shall constitute authentic evidence of such fact for the purpose of executory process.

8. The Borrower waives the benefit of the demand and three days' delay required by Louisiana Code of Civil Procedure articles 2639 and 2721.

9. For purpose of permitting executory process under the law of Louisiana, the Borrower confesses judgment in favor of the Creditor for all Obligations up to the maximum amount of two million dollars.

10. The Borrower promises to pay all costs and expenses (including reasonable attorneys' and keeper's fees) incurred by the Creditor to obtain, preserve and enforce the security interest granted herein, to collect or enforce the Obligations, to preserve the Claim and to enforce the security interest and realize upon the Claim. The Borrower agrees to pay interest at the rate of 12 percent per year on all such costs and expenses from the date incurred by the Creditor until reimbursed by the Borrower.

11. The Borrower promises to give immediate written notice to the Creditor if the Borrower should change his/her name or address or should obtain an additional or substitute social security number.

12. A photographic or other reproduction of this Security Agreement is sufficient as a financing statement.

13. **Power of Attorney.** The Borrower appoints the Creditor as the Borrower's true and lawful attorney-in-fact, with full power of substitution, to do the following: (a) to demand, collect, sue for, receive, receipt for, and recover all sums of money and property which may now or hereafter become due, owing and payable from the Claim; (b) to execute, sign and endorse any and all claims, instruments, receipts, checks, drafts or warrants issued in payment for the Claim; (c) to settle or compromise any and all claims arising under the Claim, and, in the Borrower's place and stead, to execute and deliver a release or settlement for such Claim; and (d) to file any claim or claims or to take any action or institute or take part in any proceeding, in either the Borrower's name or the Creditor's, or otherwise, which the Creditor in its sole discretion may deem to be necessary or advisable. This power of attorney is given as security for the Obligations, and the authority hereby conferred is and shall be irrevocable and shall remain in full force so long as this Security Agreement remains in effect.

14. **Right to Collect and Enforce Payments.** The Creditor shall have the right, after a default, when appropriate and within the Creditor's sole judgement, to file suit in the name of the Borrower or the Creditor and to collect any and all proceeds that may then and/or in the future be due and owing with respect to the Claim. The Borrower also authorizes the Creditor, if the Creditor should deem it to be appropriate within the Creditor's sole judgement, to appoint a substitute counsel to represent the Borrower in the Claim, which substitute counsel is authorized to compromise or settle the Claim on such terms as substitute counsel may deem appropriate. The Borrower directs the Attorney and all Other Lawyers to deliver any Claims file and other files relative to the Claim to the substitute counsel that the Creditor selects.

15. This Security Agreement shall remain in effect until all of the Obligations have been fully performed.

16. This Security Agreement shall be governed by the law (other than the law of conflicts or choice of law) of Louisiana.

4/19/99